IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Larry D. Johnson, #303296, )<br>)<br>      Plaintiff,  )<br>)<br>  vs.      )<br>)<br>Mrs. Flora Boyd, Administrator, )<br>Kershaw County Detention Center; )<br>Thomas William's (sic), Assistant )<br>Administrator, Kershaw County )<br>Detention Center; Mr. Steve McCaskell, )<br>Sheriff Kershaw County; Lee Boan, )<br>City Investigator; Thomas Williams, )<br>Chief Correctional Officer; Sheriff )<br>Deputy Hathway; Ms. Mary Anderson, )<br>Correctional Officer; Correctional )<br>Officer Alexander, Kershaw County )<br>Detention Center; Ms. Claxton, )<br>Classification Specialist; and Nurse )<br>Cook, Detention Center Medical Staff, )<br>)<br>      Defendants.  )<br>_____) | Civil Action No. 6:04-23044-TLW-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the court on a motion to dismiss filed by defendants Anderson, Alexander, and Claxton, a motion for summary judgment filed by defendants Boyd, Williams, McCaskill and Hathaway, a motion for summary judgment filed by defendant Cook, and a motion for summary judgment filed by defendant Boan.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to

review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff filed his complaint on November 29, 2004, alleging that the defendants violated his constitutional rights. Defendant Boan filed an answer on December 28, 2004. Defendants Anderson, Alexander and Claxton filed a motion to dismiss on December 29, 2004. Defendants Boyd, McCaskill, Hathaway and Williams filed an answer on December 29, 2004. Defendant Cook filed an answer to the plaintiff's complaint on January 3, 2005. By order filed on January 5, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. Because the plaintiff did not file a response, the court issued an order informing the plaintiff that if he did not file a response to the motion to dismiss by March 28, 2005, the action would be dismissed against those defendants for failure to prosecute. The plaintiff did not file a response to the motion to dismiss.

Defendants Boyd, McCaskill, Hathaway and Williams filed a motion for summary judgment on February 11, 2005. On February 18, 2005, the court issued a *Roseboro* order again advising the plaintiff of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to this motion by March 24, 2005. The plaintiff filed a response in opposition to this motion on March 8, 2005. Defendants Boyd, McCaskill, Hathaway and Williams filed a reply to the plaintiff's response on March 14, 2005. The plaintiff filed a response to the defendants' reply on March 25, 2004.

Defendant Cook filed a motion for summary judgment or, in the alternative, to dismiss for lack of jurisdiction on February 17, 2005. On March 3, 2005, the court again issued a *Roseboro* order advising the plaintiff of the summary judgment dismissal procedure

and the possible consequences if he failed to adequately respond to this motion by April 6, 2005.  The plaintiff filed a response to this motion on March 8, 2005.

Defendant Boan filed a motion for summary judgment on April 18, 2005.  On April 21, 2005, the court issued a *Roseboro* order again advising the plaintiff of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to this motion by May 25, 2005. The plaintiff filed a response on May 6, 2005.

## **FACTUAL BACKGROUND**

The plaintiff was arrested on November 5, 2003, after an incident of domestic violence in which he was allegedly struck in the head with a baseball bat by his niece.  As a result of this arrest, the plaintiff was charged with assault and battery of a high and aggravated nature.  He alleges that, after his arrest, he requested medical attention for injuries he received during an altercation with his niece prior to his arrest, but he was not provided medical attention by the arresting officer.

According to the arresting officers, the plaintiff did not have visual signs of injuries and did not request medical treatment; thus, he was transported to Kershaw County Detention Center (KCDC).  (Coleman Aff. ¶ 8; Robinson Aff. ¶ 8.)  En route to KCDC, the plaintiff tried to bang his head against the cage separating the front and back seats, but the arresting officer observed no injury to the plaintiff.  (Coleman Aff. ¶ 9.)  The KCDC will not accept an inmate in need of medical attention.  (Robinson Aff. ¶ 9.)  Upon his arrival at KCDC, the plaintiff was evaluated and treated by defendant Cook, a nurse in the infirmary. According to his medical records, he showed no visible signs of injury or bleeding.  (Cook Motion Ex. B.)  In fact, according to his KCDC medical records, the plaintiff never presented with any medical problems requiring further treatment.  (Cook Motion Ex. B.)

The plaintiff alleges that he was assaulted by other inmates in the early morning hours of January 1, 2004.  He claims that someone threw water on him while he

3

was trying to sleep.  When he asked who did so, inmate Brad Joyner pointed to inmate Anton Mitchel.  The plaintiff alleges that he went back to bed.  Shortly thereafter, he heard the door to his cell open and saw inmate Danny Harris holding the door open while inmate Mitchel brought a tub of water into his cell.  When he told them to leave him alone, they held him down and began punching him and kicking him.  When another inmate pulled him off of the plaintiff, Inmate Mitchel threw the tub of water on the plaintiff and his belongings.  At this point, Officer Alexander appeared and broke up the altercation.  The plaintiff claims that he suffered injuries to his back, head and neck.  He alleges that he requested medical attention but was denied.

The plaintiff alleges that KCDC officers discouraged him from pressing charges against his attackers.  The incident was investigated by Classification Specialist Claxton and "City Investigator" Lee Boan.

The plaintiff seeks damages in the amount of five million dollars.

## APPLICABLE LAW

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An

4

issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. V. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in her pleadings; rather, she must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiffs position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### *Defendants Anderson, Alexander and Claxton*

The plaintiff names Mary Anderson, "Correctional Officer Alexander," and "Classification Specialist Claxton" as defendants in the caption of the complaint. However, affidavits of service were returned unexecuted for these defendants. More than 120 days

5

have passed since the summons for these defendants were issued on December 3, 2004. Thus, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the complaint should be dismissed against defendants Anderson, Alexander and Claxton.

***Exhaustion of Administrative Remedies***

The defendants argue that the plaintiff's claims should be dismissed based upon the plaintiff's alleged failure to exhaust his administrative remedies as required by Title 42, United States Code, Section 1997e.

The Prison Litigation Reform Act (PLRA) amended 42 U.S.C. §1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has held that this section requires an inmate challenging his conditions of confinement to exhaust all administrative remedies before filing an action in district court. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by §1997e(a) is now mandatory"). Accordingly, before plaintiffs may proceed with their claims in this court, they must first exhaust administrative remedies. *See Booth v. Churner*, 532 U.S. 731 (2001).

The evidence in the record reveals that the plaintiff has not completed the administrative remedy process as to his claims in this action (compl. II). The KCDC has an administrative grievance procedure to handle disputes, but the plaintiff did not file a grievance pursuant to that process (compl. II). Thus, it appears that the plaintiff did not exhaust his administrative remedies and that his claims should be dismissed on this ground.

***Due Process Violation***

6

Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979); *Cooper v. Dyke,* 814 F.2d 941, 948 (4th Cir. 1987).

### *Denial of Medical Care*

"The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) (citing *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988)). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976).  This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services.  *Id.*  The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Id.* at 105.  Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended.  *Id.* at 104.  As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach.  *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto."  *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987).  A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention."  *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied,* 500 U.S. 956 (1991)."It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."  *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does

7

not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Here, the plaintiff appears to claim that he was denied medical care at the time of his arrest and booking as well as after the fight on January 1, 2004. For none of these incidents, however, is the plaintiff able to establish either "a serious medical need . . . [or] the defendant's purposeful indifference thereto." *Sires*, 834 F.2d at 12. Medical records from November 6, 2003, when he was arrested and booked, indicate that the plaintiff had no visible signs of injury. He was also examined by the doctor on November 12, 2003, and found to be stable. Similarly, following the January 1, 2004, incident, the plaintiff was examined by medical staff and found to have no visible signs of injury. He was seen again on January 5, 2004, with no evidence of injury. For both incidents, this is simply insufficient to establish a serious medical need or deliberate indifference to a serious medical need.

Here, the plaintiff alleges no exceptional circumstances which meet the standard of deliberate indifference to serious medical needs required for Section 1983 liability. His claims of denial of medical care should be dismissed.

### *Failure to Protect*

The plaintiff also appears to accuse the defendants of failing to protect him from attack by other inmates. Similarly, where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* (citing *Bell,* 441 U.S. at 53). Absent a showing of expressed intent to punish on the part of the correctional officials, the determination of whether a particular action is punitive turns on whether it was rationally connected to legitimate non-punitive

governmental objectives and whether it was excessive in relation to that purpose. *Bell*, 441 U.S. at 537-40; *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).

To state a *prima facie* Eighth Amendment claim for conditions of confinement, a two-prong test must be met:  the plaintiff must be able to show that (1) there was a serious deprivation of a basic human need, and (2) that prison officials were deliberately indifferent to the prison conditions. *Wilson v. Seiter*, 501 U.S. 294, 300 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Shakka v. Smith*, 71 F.3d 162, 165 (4th Cir.1995).

The first prong of the Eighth Amendment test requires a showing both (i) that conduct of which the plaintiff complains was so grave that it violated contemporary notions of decency and (ii) that the prison condition resulted in serious or significant physical or emotional injury.    *Strickler v. Waters*, 989 F.2d 1375, 1379-81 (4th Cir.1993).    Applying *Rhodes v. Chapman*, 452 U.S. 337 (1981), the Fourth Circuit has held that before a claim "of a constitutional magnitude can be said to exist, there must be evidence of a serious medical and emotional deterioration attributable to" the challenged condition. *Shrader v. White*, 761 F.2d 975, 979 (4th Cir. 1985); *see Sweet v. South Carolina Dep't of Corrections*, 529 F.2d 854 (4th Cir. 1975).

The second component of an Eighth Amendment claim is subjective.   It requires that the defendant have had a sufficiently culpable state of mind. *Strickler*, 989 F.2d at 1379.  "In prison condition cases that state of mind is one of 'deliberate indifference' to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). In *Farmer*, the Court held that a prison official is deliberately indifferent "if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Id. at 847.*

In this case, the plaintiff alleges that, as a result of the January 1 incident, he suffered "pain in my lower back, servier (sic) head and neck injurys (sic), and I was afraid that at any time this same thing could happen again" (compl. IV).  However, there is no

9

evidence to support these allegations. Rather, as discussed above, the plaintiff was found to be without any signs of injury when he was examined by medical staff on January 1 and January 5. One month later, on February 4, 2004, the plaintiff complained of back pain from the fight. The doctor, however, found no visible signs of injury. The plaintiff made no futher complaints of pain related to the January 1 incident. Again, this is insufficient to establish that the plaintiff suffered "a serious medical and emotional deterioration attributable to" the fight. *Shrader*, 761 F.2d at 979.

Moreover, because it is undisputed that the altercation was disrupted by Officer Alexander, who responded in a timely manner, the plaintiff cannot demonstrate that defendants acted with deliberate indifference to his health or safety. Indeed, the plaintiff has neither alleged nor produced evidence that the defendants knew that the attack would occur or that they acted inappropriately in responding to the fight. Therefore, the plaintiff's claim relating to the failure to protect him from attack by other inmates should be dismissed.

### *Improper Investigation*

To the extent that the plaintiff challenges the investigation of the January 1 incident, he cannot establish a violation of a constitutional right. *Gomez v. Whitney*, 757 F.2d 1005 (9th Cir. 1985) (inadequate investigation is insufficient to state a civil rights claim). Moreover, it is undisputed that the incident was investigated. The inmates involved not only were placed on lockdown at KCDC but also pled guilty to criminal charges stemming from the attack. (Williams Aff. ¶¶ 11-12.) The plaintiff has not established a violation of his Fourteenth Amendment rights, and this claim should be dismissed.

### *Respondeat Superior*

Defendants Boyd and McCaskill also argue that they cannot be held liable in a §1983 action on the basis of *respondent superior*. The doctrine of *respondeat superior*

10

generally is inapplicable to §1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 691-92 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).

A supervisor may be held liable for the constitutional violations committed by his subordinates, but only if the plaintiff can show that the supervisor tacitly authorized, or was deliberately indifferent to, the subordinates' actions. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). Supervisory liability for constitutional injuries is not imposed on a *respondeat superior* basis. *Id*. In order to hold a supervisor liable for a constitutional injury inflicted by a subordinate, a plaintiff must establish three elements: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Id*. at 799. A plaintiff must generally produce evidence that the conduct complained of is prevalent or has been repeated on several occasions, and that the supervisor has refused to act "in the face of documented widespread abuses." *Id*. (citing *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)). Here, the plaintiff has not met his burden.

### *Qualified Immunity*

The defendants have also raised the defense of qualified immunity. Qualified immunity protects government officials performing discretionary functions from suits for civil damages arising out of the exercise of their discretionary functions, provided that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)). The plaintiff's rights must be established so clearly that a "reasonable official would

understand that what he is doing violates that right." *Slattery*, 939 F.2d at 216 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 97 L.Ed.2d 523, 107 S.Ct. 3034 (1987)). Accordingly, ruling on a defense of qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).[1]

In determining whether the specific right allegedly violated was clearly established, tolerance is accorded in the qualified immunity defense to "'good faith' mistakes of judgment traceable to unsettled law, or faulty information, or contextual exigencies. . . [which] is deliberately designed to give protection to 'all but the plainly incompetent or those who knowingly violate the law.'" *Pritchett*, 973 F.2d at 313 (citing *Malley v. Briggs*, 475 U.S. 335, 341, 89 L.Ed.2d 271, 106 S.Ct. 1092 (1986)).

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 286, 290 (1999); *see also Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both

---

[1] In order to shield officials from both the burdens of litigation as well as liability, establishment of qualified immunity is encouraged at the summary judgment stage. *Pritchett*, 973 F.2d at 313 (citing *Harlow,* 457 U.S. 800, 815-819). However, summary judgment remains appropriate "only if (1) there are no genuine issues of material fact, and (2) on the undisputed facts the defendant as movant is entitled to judgment as matter of law." *Pritchett*, 973 F.2d at 313 (citations omitted). Thus, it is appropriate to consider the third element of a qualified immunity defense (i.e., whether a reasonable officer would have known that his conduct violated a specific right) only if there are no genuine issues of fact with respect to the official's conduct under the circumstances. If issues of fact do exist, summary judgment is inappropriate, and the issue must be reserved for trial. *Pritchett*, 973 F.2d at 313 (citing *Mitchell*, 472 U.S. at 526).

the officers and the general public." *Wilson,* 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir. 1998); *see also Young v. City of Mount Rainier*, 238 F.3d 567, 577-78 (4th Cir. 2001) (where court concluded that the complaint did not allege a constitutional violation, there was no need to consider the question of qualified immunity).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, to the extent that the plaintiff is suing the defendants in their individual capacities, the defendants are entitled to qualified immunity on these claims.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motions to dismiss and for summary judgment be granted. Any pending nondispositive motions will be held in abeyance pending the district court's disposition of the motion for summary judgment. Should the District Judge adopt this court's recommendation, the motions will be rendered moot.

s/William M. Catoe<br>
United States Magistrate Judge

August 10, 2005

Greenville, South Carolina